**DARTMOUTH WOOLEN MILLS, Inc., v. MYERS, Acting Regional Director, et al.**

**No. 291.**

District Court, D. New Hampshire.

Aug. 11, 1936.

752

Albert Leahy, of Claremont, N. H., for Dartmouth Woolen Mills.

Malcolm Halliday, of Washington, D. C., for Labor Board.

MORRIS, District Judge.

This is an action in equity filed May 8, 1936, wherein the Dartmouth Woolen Mills, Inc., a corporation duly established under the laws of the state of New Hampshire and having a principal place of business at Claremont, county of Sullivan, state of New Hampshire, herein referred to as the corporation, complains against A. Howard Myers, Acting Regional Director of the National Labor Relations Board in and for the First Region, and John Doe (said name being fictitious), trial examiner designated or to be designated by the National Labor Relations Board, J. Warren Madden, John M. Carmody, and Edwin S. Smith, constituting the National Labor Relations Board, and Local No. 2123, United Textile Workers of America, and alleges:

1. That on March 3, 1936, and for a long time prior thereto, it was engaged in the manufacture of woolen goods at said Claremont, and that it was necessary for the profitable conduct of its business that it employ skilled employees, and that it was entitled to conduct its business and affairs without the unlawful intervention of the defendants.

2. That on March 4, 1936, members of Local Union No. 2123 left their positions in the plant and declared themselves to be on a "holiday."

3. That at the time said employees left their work the corporation had large orders to fill, as the members of the Local Union No. 2123 well knew.

4. That the corporation kept its plant in operation until the orders that it had received had been filled, but that the members of the said Union, their confederates, aiders, abettors, and sympathizers, and other persons to the complainant unknown, engaged in a conspiracy to obstruct and injure the corporation's good will, trade, and business and to obstruct and interfere with the corporation in securing and maintaining an adequate force with which to operate the plant until such time as said corporation should agree to operate its mill upon terms and conditions dictated by the members of said union.

5. That by reason of the unlawful actions and interference of the officers, agents and members of said union and their aiders and abettors, said corporation on March 9, 1936, was obliged to stop most of its operations, in consequence of which many employees who were ready and willing to work

were thrown out of employment and deprived of an opportunity of earning a livelihood, and said corporation suffered an irreparable loss by reason of the fact that it was unable to accept and fill available orders for goods of its manufacture, which said loss, cost, damage, and expense, so suffered and incurred, was unnecessary and irreparable and was due solely to the willful, intentional, unlawful, and illegal interference and obstruction by said Local Union No. 2123.

6. That on May 2, 1936, a complaint was filed with the National Labor Relations Board on behalf of the United Textile Workers of America, Local Union No. 2123, against the complainant, Dartmouth Woolen Mills, Inc., alleging that said corporation has engaged in, and is now engaged in, certain unfair labor practices affecting commerce as set forth and defined in the National Labor Relations Act, approved July 5, 1935 [29 U.S.C.A. §§ 151-166], and on May 4, 1936, a copy of said complaint was received by the Dartmouth Woolen Mills, Inc., entitled, "In the matter of Dartmouth Woolen Mills, Inc., a corporation, and United Textile Workers of America, Local Union No. 2123, Case No. I-C-47," and that a hearing would be conducted on May 11, 1936, at 10 o'clock in the forenoon in the town hall in said Claremont, before the National Labor Relations Board by a trial examiner to be designated, "whose name to your petitioners is unknown."

7. That said corporation filed an answer to the complaint, a copy of which is attached to and made a part of the complainant's petition.

8. That the National Labor Relations Board has no jurisdiction over the Dartmouth Woolen Mills, Inc., or its employees, and that it has no authority to require said company, its officers, agents, and servants, to appear and testify before said board or its trial examiner, or to examine the books, records, or documents of said corporation relating to its employment or discharge of any employees, or in connection with the designation or selection of representatives of said company's employees.

9. That said National Labor Relations Board has no jurisdiction or authority over the officers, agents, servants, and representatives of said corporation and no jurisdiction to interfere with the conduct of its manufacturing business or the relations between said corporation and its employees.

10. That the National Labor Relations Act (chapter 372), approved July 5, 1935, is unconstitutional and void because said act: (a) Attempts to regulate not within the powers of Congress in violation of the Tenth Amendment. (b) Deprives the Dartmouth Woolen Mills, Inc., and its employees of their liberty without due process of law and violates the Fifth Amendment. (c) Deprives the Dartmouth Woolen Mills, Inc., of its property without due process of law in violation of the Fifth Amendment. (d) Attempts unconstitutional delegation of judicial powers to an administrative body. (e) Violates the Seventh Amendment, in that it deprives the Dartmouth Woolen Mills, Inc., of its right to trial by jury in providing for the awarding of unearned wages to discharged employees. (f) And cannot be applied to the Dartmouth Woolen Mills, Inc., because its operations are purely local intrastate transactions, initiated and completed within the state of New Hampshire.

11. That the operations of the Dartmouth Woolen Mills, Inc., does not constitute interstate commerce, and Congress has no authority to regulate its manufacturing operations or its relations between it and its employees.

12. That the corporation denies that it has refused to bargain collectively with its employees, and alleges that if it has so refused, such refusal does not directly affect commerce among the states or give the National Labor Relations Board jurisdiction over said employer or its employees.

13. That the members of said Local No. 2123 do not constitute a majority of the employees of said corporation.

14. That said National Labor Relations Board should be enjoined from conducting a hearing assigned for May 11, 1936, and from subpœnaing the officers, agents, and servants of said corporation, and from examining its books and records, and from doing any act or acts which would interfere with the conduct of the corporation's manufacturing business or with its relations with its employees.

15. That if said National Labor Relations Board is permitted to conduct said hearing on May 11, 1936, or at any adjournment thereto, and if the allegations in said complaint should be found to be true, irreparable injury and loss would result to said corporation and said corporation would be compelled to cease operation, and

if it disobeyed the order it would be subjected to punishment for contempt.

16. That said business of said corporation would be interrupted and it would be subjected to large and irrecoverable expense and its good will affected, and it would be held up as an object of public ill will and scorn.

17. That your petitioner is informed and believes, therefore avers upon such informations and belief, that the charges against said corporation were preferred by Edward Bentley of said Claremont, individually and as an officer and representative of the United Textile Workers of America, Local No. 2123, are financially irresponsible, and that your petitioners have no remedy against time for the loss, cost, damage, and expense incurred as a result of the filing of said charges and the institution 'of said complaint.

18. That your petitioner has no adequate remedy at law.

19. The prayer of the petition is that the court take jurisdiction of the premises under the provisions of the Federal Declaratory Judgment. Act (28 U.S.C.A. § 400), and render a declaratory judgment,. judging and declaring:

1. That the defendants be enjoined and restrained from prosecuting said complaint and from examining or attempting to examine the books, records, and documents of the complainant relating to its employment or the discharge of any of its employees, or compelling ·or attempting to compel the complainant's officers, agents, or servants compelling the inspection of the complainant's books, records, or documents before any member or agent of the National Labor Relations Board, and from interfering with, or attempting to interfere with, the conduct of its manufacturing business or with the relations between the complainant and its employees.

2. That the National Labor Relations Act be declared void and unconstitutional, and that the defendants be enjoined and restrained forthwith from attempting in any way from enforcing or applying any orders, provisions, or the rules or regulations of said board against said corporation or its employees.

3. That the court issue forthwith a stay order restraining all procedure on a hearing before the National Labor Relations Board until the constitutionality of the National Labor Relations Act is determined.

4. That the court find facts in conformity with Equity Rule 70½ (28 U.SC.A. following section 723).

5. That the court dismiss forthwith the complaint now pending against the complainant.

6. That the injunction above prayed for be ordered forthwith, and that the petitioner be relieved from filing any bond therefor, and for such other relief as may be just.

An examination of the complaint filed against the petitioner by the United Textile Workers of America, Local Union No. 2123, a copy of which is attached to the bill of complaint, discloses that the corporation is charged with unfair labor practices affecting commerce in: (1) That it has refused, and still refuses to bargain collectively in respect to rate of pay, wages, hours of employment, and other conditions of employment with said union as the exclusive representative of all the employees of said Union. (2) That since March 5, 1936, said respondent has refused to give employment to certain of its employees · for the reason that said employees were active in a labor organization known as the United Textile Workers of America, Local No. 2123. (3) That the officers, agents, and employees have interfered with the formation and administration of a labor organization known as the Dartmouth Woolen Mills, Employees Protective Association, thereby interfering and restricting and coercing its employees in their right to self organization.

On May 25, 1936, a special appearance by attorney was filed by J. Warren Madden, John M. Carmody, and. Edwin S. Smith, constituting the National Labor Relations Board. Said special appearance was made for the sole purpose of objecting to the jurisdiction of this court over said defendants. On the same date, May 25, 1936, the defendant A. Howard Myers, Acting Regional Director for the National Labor Relations Board, in and for the First Region, entered a general appearance and moved that the action be dismissed, and assigned as reasons:

1. That on the face of the petition it fails to state a cause of action entitling the complainant to the relief prayed for or any relief in equity against the defendant.

2. That the petition on its face shows that the plaintiff is not threatened with or in danger of suffering any great or irreparable or immediate injury cognizable in

equity by reason of any matter set forth in the petition.

3. That the allegations set forth in said petition of adverse publicity and expense incidental to the defense of this suit are not allegations of irreparable injury cognizable in equity.

4. Because it appears on the face of the petition that the case does not really and substantially involve a dispute properly within the jurisdiction of this court, in that it fails to allege that the amount in controversy is in excess of $3,000 exclusive of interest and costs.

5. Because it appears that no real, substantial, or colorable dispute or controversy involving the Constitution and laws of the United States is involved.

6. Because it appears that the petitioner by following the procedure set forth in the National Labor Relations Act would not be deprived of property without due process of law and would not be denied the equal protection of the law.

7. Because the petition fails to state a case or controversy or a justiciable question for the determination of this court within the meaning of article 3, §§ 1 and 2, of the Constitution of the United States.

8. Because the petition fails to show an "actual controversy" within the meaning of the Federal Declaratory Judgment Act, section 274d of the Judicial Code (section 400, title 28 U.S.C.A.).

9. Because the petition fails to allege that a multiplicity of cases will result if the relief herein prayed for is not granted.

10. Because it appears on the face of the petition that granting the relief prayed for would constitute an invasion of the powers of the legislative and executive branches of the federal government and the usurpation of the authority vested in the Circuit Court of Appeals by the National Labor Relations Act.

11. Because the petitioner has a complete and adequate remedy at law.

12. Because the petitioner has failed to resort to any of its administrative remedies and has failed to exhaust such remedies.

13. Because the petitioner has the right and opportunity for a full hearing before the board.

14. Because an adverse finding of the trial examiner involves no compulsion or enforceable obligation upon the plaintiff, and the plaintiff has an opportunity to be further heard before any enforceable orders can be made, and after such orders are made may appeal to the Circuit Court of Appeals for this circuit.

15. That the appeal to the Circuit Court of Appeals provides a full, adequate, and complete remedy.

16. Because subpœnas issued by the National Labor Relations Board have no legal force or effect except by application to the United States District Court for an order enforcing the same.

17. Because the petition fails to allege that the defendant Myers has immediately threatened or is claimed to have threatened to apply to the District Court for an order enforcing compliance with any subpœna heretofore issued.

18. Because it appears upon the face of the petition that no subpœnas have been issued by the National Labor Relations Board to compel the attendance of the plaintiff or its other employees.

19. Because it appears to be beyond the power of the acting regional director to attempt to prosecute or to prosecute the plaintiff in any respect involving any fine, forfeiture, or penalty.

20. Because the petition fails to allege that the defendant or any of its agents have threatened to exercise any power to prosecute the plaintiff criminally.

21. Because the petition fails to allege that the defendant has threatened to make or issue a cease and desist order from any unfair labor practices defined in section 8 of the act (29 U.S.C.A. § 158).

22. Because it appears that the regional director cannot issue a cease and desist order and that such order can be issued only by the National Labor Relations Board, after a full hearing.

23. Because the National Labor Relations Act is valid and constitutional.

24. Because it appears on the face of the petition that the purpose of the proceedings instituted against the plaintiff is for the determination of whether or not the plaintiff has engaged or is engaging in any unfair labor practices affecting commerce.

25. Because it appears on the face of the petition that the suit herein instituted is designed to halt such inquiries at its threshold and is for the sole purpose of having this court rule in limine on the propriety of the inquiry without any basis cognizable in equity.

26. Because it appears on the face of the petition that large public interests are concerned herein and that the issuance of an injunction will seriously embarrass the accomplishments of important governmental ends and will interfere with an agency of the government in the performance of its duty.

The antecedent facts leading up to the filing of this petition are that on May 4, 1936, a complaint was received by the Dartmouth Woolen Mills, charging it with unfair labor practices as hereinbefore set forth. This complaint was signed by A. Howard Myers, Regional Director for the First Region, whose relation to the board is described in the attestation of the complaint as follows: "In witness whereof the National Labor Relations Board has caused this, its complaint and notice of hearing, to be signed by the acting regional director for the first region on the 2nd day of May 1936."

It contained a notice of hearing on the complaint to be held at Claremont, N. H., May 11, 1936. The above-mentioned complaint and notice of hearing resulted in the filing of the present petition. A temporary restraining order was issued under date of May 8, 1936. On May 25, Malcolm Halliday appeared generally for the defendant Myers and specially for J. Warren Madden and others constituting the National Labor Relations Board, and filed the motion hereinbefore set forth.

Arguments on the motions have taken a wide range, including nearly every phase of the National Labor Relations Act, powers of the commission, and duties of the Regional Director and trial examiner. It is unnecessary for the court to examine at this stage of the proceedings all of the points raised by counsel in argument and the voluminous briefs filed with the court. The motion to quash the subpœna raises the question whether or not the court has any jurisdiction over the National Labor Relations Board as a board or individually.

The defendant Myers is the only defendant before the court. His voluntary appearance was entered when he filed his motion to dismiss the complaint. No service on the board as such, or upon them individually, has been made within this district. It is argued by the complainant that the appearance of the defendant Myers has vested this court with jurisdiction of the individual members of the board acting in their official capacity.

On behalf of the board it is argued that the residence of the National Labor Relations Board is in Washington, and that therefore it can be sued only in the courts of the District of Columbia. As tending to sustain this contention, counsel cite the following cases: Butterworth v. Hill, 114 U.S. 128, 5 S.Ct. 796, 29 L.Ed. 119; Hammer v. Robertson (C.C.A.) 6 F.(2d) 460; Transcontinental & Western Air, Inc., v. Farley (C.C.A.) 71 F.(2d) 288, and Rafelson Co., Inc., v. Tugwell (C.C.A.) 79 F. (2d) 653.

The facts in the instant case are clearly distinguishable from those in the above-mentioned cases, in that the defendants in the above-entitled cases had not initiated any proceedings within the jurisdiction of the District Courts, as appears in the instant case, so that they had become amenable to the processes of those courts.

In the case at bar the Dartmouth Woolen Company, Inc., is engaged in manufacturing within the district of New Hampshire. It is a New Hampshire industry. Its property and business are located within this state and judicial district. It is entitled to the protection of the constituted tribunals within this area, both state and federal. When any outside individual, corporation, or administrative agency comes within the state invading the property rights of its residence, whether such action be administrative, judicial, or quasi-judicial, they so far submit themselves to the jurisdiction of this court as to become amenable to its processes at least to the extent necessary for the protection of local property rights. They cannot maintain an action here and hide behind state lines claiming immunity from service.

They are present within this jurisdiction so far at least as necessary for the maintenance of their action, and to that extent they are within the jurisdiction of this court. Service upon those present and acting is controlling upon those without the state upon whom no personal service can be made. Such in effect is the ruling of the Circuit Court of Appeals for the First Circuit in the case of Veitia et al. v. Fortuna Estates, 240 F. 256. See, also, Franz v. Franz (C.C.A.) 15 F.(2d) 797; Ryan v. Amazon Petroleum Corp. (C.C.A.) 71 F. (2d) 1; Philadelphia Co. v. Stimson, Secretary of War, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570. In the last-entitled case it is held that in case of injury threatened by illegal action, an officer of the United States

cannot claim immunity from injunctive process.

■ I hold that the National Labor Relations Board having instituted proceedings against the Dartmouth Woolen Mills, Inc., within the district of New Hampshire, as a board and individually they have subjected themselves to the jurisdiction of this court and that the motion to quash the subpoena must be denied.

■ Defendants' motion to dismiss for want of equity raises a more serious and difficult problem, because it is a well-recognized principle of equity jurisprudence that in order to entitle a complainant to equitable relief his petition must set forth grounds universally recognized as grounds for such relief.

This brings us to the point of examining the petition to determine if such grounds are alleged.

One important allegation which appears to be at the forefront in the petition is that the National Labor Relations Act is unconstitutional and that any proceedings brought thereunder are illegal, without the force of law and an invasion of the petitioner's property rights.

■ It has been held, however, that the unconstitutionality of an act of Congress is not an independent ground for equitable relief. That there must be additional reasons why a court of equity should interfere, such as irreparable injury before equity will intervene.

In the case of Boise Artesian Hot & Cold Water Company v. Boise City, 213 U. S. 276, 29 S.Ct. 426, 429, 53 L.Ed. 796, it is held that equity will not interpose where there is a remedy at law which is as complete, practicable, and adequate as equity could afford, and further quoting from the language of Mr. Justice Moody: "It is safe to say that no case can be found where this court has deliberately approved the issuance of an injunction against the enforcement of an ordinance resting on state authority, merely because it was illegal or unconstitutional, unless further circumstances were shown which brought the case within some clear ground of equity jurisdiction." In the case of Cruickshank v. Bidwell, 176 U.S. 73, 20 S.Ct. 280, 44 L.Ed. 377, it is held that the mere fact the law is unconstitutional does not entitle the party to relief by injunction against proceedings in compliance therewith, but it must appear that he has no adequate remedy by the ordinary processes of the law or that the case falls under some recognized head of equity jurisdiction. Other cases to the same point are Sparks v. Mellwood Dairy (C.C.A.) 74 F. (2d) 695; Sparks v. Hart Coal Corp. (C.C. A.) 74 F.(2d) 697.

It follows from the principle of the above-mentioned cases that it is essential that the plaintiff in this case allege and show that it will suffer irreparable injury unless this court intervenes to grant injunctive relief. The mere allegation that the National Labor Relations Act is unconstitutional is insufficient.

In paragraph 15 of the complainant's petition it is alleged that if the National Labor Relations Board is permitted to conduct said hearing and if the allegations alleged in said petition and complaint should be found to be true, irreparable injury and loss would result to the petitioner, in that a cease and desist order would be issued which would result in the discontinuing of its business, and if they disobeyed the order they might be subject to punishment for contempt.

In other words, its claim is that it would be compelled to shut down the factory by reason of the enforcement of an unconstitutional act.

■ Equity jurisdiction cannot be successfully invoked by mere general allegations of irreparable injury. Such a contention must be supported by specific facts particularly describing the injury claimed.

Paragraph 16 of petitioner's bill alleges that by reason of the filing of the complaint against it and the hearing to be conducted thereunder, the business of said corporation will be interrupted and it will be subjected to large and irrecoverable expense and will be held up as an object of public ill will and scorn.

As bearing upon the irrecoverable expense, it is alleged that Edward Bentley, who instituted the complaint before the Labor Relations Board and the Local Union No. 2123, are financially irresponsible, and that the petitioner would have no remedy against them for any loss, cost, or damage and expense incurred as a result of the filing of said charges and the institution of said complaint.

It is probably true that the complainants before the National Labor Relations Board were not required to furnish any bond to reimburse the petitioner for any loss or costs that it might sustain. It may, and

it may not, be true that they are financially irresponsible; that is a question of fact undetermined. To what extent the business of the corporation would be interrupted, the probable costs and expense that would be incurred, and to what extent it would be the object of public ill will and scorn, are all questions of fact which can only be determined, if at all, after a hearing upon the merits of the allegations in the petition.

That a business corporation is entitled to the good will and allegiance of its employees is not an idle statement. Human nature in the aggregate does not change. The complaint filed by the National Labor Relations Board affects only the production employees of the corporation. Its tendency will be to create strife between such of the employees as have instituted this proceeding and those who remain at work. Such strife is likely to lead to unfriendly relations not only between different factions of employees, but between employees and employers. It is bound to affect the loyalty of the workmen toward their employers, which will be reflected in production and prosperity of the business.

The purpose of the complaint brought by the National Labor Relations Board against the petitioner herein is to coerce it and to compel it to comply with all the demands, or some of the demands, of such of its employees as have declared a "holiday," which appears to be only another name for a "strike."

In the case of Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 38 S.Ct. 65, 73, 62 L.Ed. 260, L.R.A.1918C, 497, Ann. Cas.1918B, 461, Mr. Justice Pitney makes the following observation: "In short, plaintiff was and is entitled to the good will of its employees, precisely as a merchant is entitled to the good will of its customers although they are under no obligation to continue to deal with him. The value of the relation lies in the reasonable probability that by properly treating its employees, and paying them fair wages, and avoiding reasonable grounds of complaint, it will be able to retain them in its employ, and to fill vacancies occurring from time to time by the employment of other men on the same terms. The pecuniary value of such reasonable probabilities is incalculably great, and is recognized by the law in a variety of relations."

In the case of Utility Investing Corp. v. Stuart (D.C.) 11 F.Supp. 391, Kirkpatrick, Judge, says with reference to the issuance of an injunction enjoining a prosecution under the Pennsylvania Securities Act (70 P.S.Pa. § 1 et seq.): "There is no decision which limits the right of injunction to cases in which the prosecutions are under an unconstitutional statute, provided the requisites of federal jurisdiction are otherwise present."

The right to issue an injunction does not depend entirely upon whether or not the National Labor Relations Act is unconstitutional, although unconstitutionality should be an important factor to be considered.

It is interesting to note that in the case last above cited the court held that the elements of expense, cost, and loss were sufficient to authorize injunctive relief.

It certainly is a debatable question whether or not the National Labor Relations Act is constitutional, and if constitutional, whether it can be applied to a private manufacturing plant whose business is entirely within the limits of a state. Upon this point I express no opinion. See National Labor Relations Board v. Jones & Laughlin Steel Corp. (C.C.A.) 83 F.(2d) 998; National Labor Relations Board v. Friedman-Harry Marks Clothing Co., Inc. (C.C.A.2) 85 F.(2d) 1; Stout v. Pratt (D.C.) 12 F.Supp. 864.

The defendants take the position that the National Labor Relations Act affords a plain, adequate, and exclusive remedy at law.

To so hold at this stage of the proceeding, I would have to assume that the law is constitutional and applicable to the petitioner, otherwise the hearing before the administrative board would not have the force of law. Furthermore, the hearing must be held before a trial examiner who is not bound by the rules of evidence, and, if the case finally reached the circuit court of appeals, the findings of the administrative board are controlling whether founded on legal evidence or otherwise. Such is not "judicial procedure" as I understand the term. There may be other debatable reasons why the act does not afford a plain and adequate remedy at law, but this is not the time to make a critical analysis of it.

For the purpose of deciding the motions before the court, it is sufficient to say that to defeat equity jurisdiction the remedy under the act should be as certain, complete, prompt, and efficient as the remedy in equity. In the case of Rumbarger v. Yokum (C.C.) 174 F. 55, it is held that

it is a rule of the federal court that to exclude jurisdiction in equity a remedy at law must not only be plain and adequate, but also complete; and if it is doubtful, difficult, or not so complete as in equity, nor so efficient and practicable to the ends of justice and its prompt administration, then equity will take jurisdiction.

### Conclusion.

While the allegations of the petition with respect to irreparable injury are more or less problematical and illusory, I do not think I ought to dismiss the petitioner's bill without giving it an opportunity to introduce evidence with respect to damages that it may suffer and any further evidence it may desire to introduce with respect to its interstate or intrastate business.

The facts should be found and reported in accordance with Equity Rule 70½ (296 U.S.Appendix, p. 671; 28 U.S.C.A. following section 723).

The defendants, if so advised, may have 15 days within which to file an answer. The case will stand for trial on its merits September 1, 1936.

The order is: Motion to quash the subpoena and motion to dismiss denied.